**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x    **FOR PUBLICATION**
In re:                                                            :
                                                                  :
                                                                  :
        JAVIER VELEZ,                                          :    Chapter 13
                                                                  :    Case No. 10-10708 (SCC)
                                                                  :
                        Debtor.          :
------------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER GRANTING DEBTOR'S MOTION TO MODIFY INTEREST RATE OF SECURED CLAIM

*A P P E A R A N C E S:*

DAVID J. BABEL, ESQ., P.C.
*Attorney for Debtor Javier Velez*
2525 Eastchester Road
Bronx, New York 10469
By:   David J. Babel, Esq.

JEFFREY L. SAPIR
*Standing Chapter 13 Trustee*
399 Knollwood Road
White Plains, NY 10603
By:   Jody L. Kava, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

       This case raises the issue whether a debtor, as part of a proposed chapter 13 plan, may modify the contract interest rate payable on an allowed secured claim for a so-called "910-vehicle" that is subject to the so-called "hanging paragraph" of section 1325 of the Bankruptcy Code. The debtor concedes that the principal amount of the secured claim must be paid in full, but argues that the contract interest rate may be modified to the "Till" interest rate. For the reasons explained below, the Court agrees with the debtor.

1

**BACKGROUND**

Javier Velez ("Debtor") filed this chapter 13 case on February 12, 2010. On March 2, 2010, Santander Consumer USA Inc. ("Santander") filed Proof of Claim # 1 ("Claim # 1"), a secured claim in the amount of "$7,152.51 + 24.99% Interest." Claim # 1 arises from the Debtor's purchase on December 1, 2008 of a 2003 Chrysler Sebring. The Debtor financed $8,714.00 of the purchase price with Santander at a contract interest rate of 24.99%, payable at $288.69 monthly, with the final payment due on November 30, 2012 (the "Loan"). The car is a so-called "910-vehicle" because it was purchased within 910 days of the Debtor's bankruptcy filing for Debtor's personal use, making Santander's claim subject to the hanging paragraph in section 1325 of the Bankruptcy Code.

On May 3, 2010, the Debtor's counsel filed a motion seeking to modify the interest rate on Santander's secured claim that would be payable through the Debtor's chapter 13 plan. The motion seeks to pay Santander's secured claim "at the Till rate of 5.25%," in this case equal to the prime interest rate plus 2%. The Debtor's 60-month Amended Chapter 13 Plan, filed on June 7, 2010, would pay Santander a total of $8,147.85, based on the principal amount of its claim of $7,152.51 plus interest at 5.25%.[1] (Amended Chapter 13 Plan ("Amended Plan"), ECF # 12, at 5.) Santander did not file a response to the Debtor's motion, nor did it file an objection to confirmation of the Amended Plan. But Claim # 1 requests full payment of the Loan with interest at the contract rate of 24.99% and states that there is "no cramdown per statute." This

---

[1] The Amended Plan lists the total debt as $8,147.85, but lists the "Value of Collateral" as $1,975.00 based on the Kelley Blue Book. (Amended Plan at 5.) Since the Debtor proposes to pay the principal amount of the debt with interest, the value of the collateral is not relevant to the decision, other than to point to the impact of the hanging paragraph.

2

presumably refers to the hanging paragraph that comes at the end of section 1325(a) of the Bankruptcy Code.

Even in the absence of a response to the motion or an objection to confirmation, the motion and the Amended Plan squarely raise the issue whether the hanging paragraph prevents a debtor from modifying the contract interest rate of a secured claim for a 910-vehicle. The Court heard argument of the Debtor's motion on June 17, 2010, and took the matter under submission.[2]

As explained below, while there are no reported decisions by this Circuit addressing the issues, courts elsewhere have recognized that the hanging paragraph prevents bifurcation of a claim secured by a 910-vehicle, but does not prevent modification of the applicable interest rate or other repayment terms. The Court concludes that the interest rate provided in the Amended Plan for payment of the Santander allowed secured claim may be modified from the contract rate. Additionally, the Court concludes that the 5.25% rate proposed by the Debtor is proper under the circumstances.

## DISCUSSION

Section 1325(a) of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 13 plan. Unless a secured creditor consents to different treatment, where the debtor retains the property securing the claim, the plan must provide that (a) a creditor of an allowed secured claim retains the lien securing the claim until the claim is paid in full or discharged, 11 U.S.C. § 1325(a)(5)(B)(i)(I); (b) "the value, as of

---

[2] On June 28, 2010, this Court's Manhattan chapter 13 case docket, including this case, was transferred from the undersigned to Hon. Shelley C. Chapman. Since this motion was argued and taken under submission before the case was transferred, I am rendering decision on the motion. Any other issues for confirmation will be heard by Judge Chapman.

3

the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim," 11 U.S.C. § 1325(a)(5)(B)(ii); and (c) the creditor must receive periodic payments in equal monthly amounts, 11 U.S.C. § 1325(a)(5)(B)(iii)(I).  With only a few exceptions, section 506(a) applies and provides, in pertinent part, that "an allowed claim of a creditor secured by a lien on property . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim."  11 U.S.C. § 506(a)(1).

The hanging paragraph of section 1325, however, provides, in pertinent part, that "[f]or purposes of paragraph (5) [of section 1325], section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within 910-day[s] preceding the date of the filing of the petition, and the collateral for the debt consists of a motor vehicle . . . acquired for the personal use of the debtor . . . ."  11 U.S.C. § 1325 (a).  Therefore, it is clear that a debtor may not bifurcate a claim secured by a 910-vehicle into secured and unsecured portions, even if the value of the collateral is less than the full amount of the debt.  *See Americredit v. Tompkins*, 604 F.3d 753, 757 (2d Cir. 2010) ("By preventing recourse to section 506(a)'s provision for the bifurcation of a claim into its secured and unsecured parts, this passage [the hanging paragraph] has generally been interpreted to [to prohibit cramdown].  A debtor who chooses to retain a vehicle purchased within this period must now either reach agreement with the creditor as to what is owed or must pay the entire claim, treating it as fully secured.") (internal

4

quotation marks and citation omitted); *Reiber v. GMAC, LLC (In re Peaslee)*, 585 F.3d 53, 57 (2d Cir. 2009) ("While a Chapter 13 debtor may generally establish a plan that allows her to retain a vehicle and bifurcate a creditor's claims into secured and unsecured portions based on the value of that vehicle in what is called a cramdown, *see* 11 U.S.C. § 1325(a)(5)(B), the hanging paragraph establishes an exception. This provision prohibits the cramdown of [purchase money security interests] secured by an automobile purchased within 910 days of the debtor's bankruptcy filing.").

But does the hanging paragraph also prohibit modification of the contract interest rate if the plan will distribute the "value" of the allowed amount of a secured claim as required by section 1325(a)(5)(B)(ii) to the secured creditor? The language of the hanging paragraph expressly precludes bifurcation of claims under section 506(a), but it is silent about modifying any other terms applicable to chapter 13 plan treatment of an allowed secured claim. Both before and after Congress added the hanging paragraph to section 1325 as part of the BAPCPA Code amendments in 2005, courts have permitted modification of the repayment terms of allowed secured claims so long as sections 1325's confirmation standards are otherwise satisfied, with the exception of claims secured by a debtor's principal residence which may not be modified because of section 1322(b)(2). *See* 11 U.S.C. § 1322(b)(2) (stating that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence"). By referring to section 506, but not to section 1322(b)(2), the hanging paragraph prohibits bifurcation of claims secured by 910-vehicles, but it does not prohibit modification of other contractual rights of a secured creditor including the proper interest rate.

5

Where a chapter 13 debtor retains property subject to a secured claim, "[t]he creditor retains a lien securing the claim, and the debtor must compensate the creditor with installment payments throughout the plan. The amount of each installment must be calibrated to ensure that, over time, the creditor receives disbursements whose total present value equals or exceeds that of the allowed claim. Thus, the debtor must pay interest on a secured claim that is paid in installments. The Bankruptcy Code, however, does not provide guidance on how to determine this interest rate." *In re Martinez*, 409 B.R. 35, 40 (Bankr. S.D.N.Y. 2009) (quoting *Assoc. Commercial Corp. v. Rash,* 520 U.S. 953, 957 (1997) and *Till v. SCS Credit Corp.,* 541 U.S. 465, 466, 468, 473 (2004)) (internal quotation marks omitted).

In *Till,* a pre-BAPCPA case, the Supreme Court addressed the appropriate method for determining the interest rate on the secured portion of a claim that was bifurcated under section 506. The debtor's chapter 13 plan proposed a 9.5% interest rate on the secured portion of the claim, calculated using a "formula rate." 541 U.S. at 471. However, the creditor argued that the 21% contract rate should apply. *Id.* at 470–71. After considering four different methods used by lower courts for determining the proper interest rate, a plurality of the Court decided that the formula approach is the appropriate method for calculating interest on the secured portion of a loan. *Id.* at 479–80. The *Till* Court defined the formula approach as the national prime rate plus an additional risk adjustment rate, which accounts for the debtor's risk of nonpayment. *Id.* at 479. The national prime rate "reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower." *Id.* The risk adjustment rate reflects that bankrupt debtors typically pose a greater risk of defaulting than commercial

6

debtors. *Id.* In selecting the formula approach, the Court reasoned that section 1325(a)(5)(B) does not require a court to use the rate provided in the original loan, nor consider the creditor's individual circumstances, prior dealings with the debtor, or alternative loans if permitted to foreclose. *Id.* at 476–77. The Court concluded that section 1325(a)(5)(B) only requires that the distributions under the claim equal the present value of the secured claim. *Id.* at 474*; see Martinez*, 409 B.R. at 41. The *Till* Court did not define how to compute the risk adjustment, but provided some guidance in noting that section 1325 "obligates the court to select a rate high enough to compensate the creditor for its risk but not so high as to doom the plan." 541 U.S. at 480. As discussed in *Martinez*, courts generally have approved a risk adjustment rate of 1% to 3%. 409 B.R. at 42. *See also In re Valenti,* 105 F.3d 55, 64 (2d Cir. 1997) ("[T]he risk premium has been set by bankruptcy courts at from one to three percent.").[3]

*Till* was a pre-BAPCPA case, but there is nothing in the Supreme Court's analysis that suggests a different result may be required for cases in which the hanging paragraph applies. Post-BAPCPA cases make this point clearly. In *Drive Fin. Servs., L.P. v. Jordan*, 521 F.3d 343 (5th Cir. 2008), the Fifth Circuit held that the formula method adopted by the plurality in *Till* should be used in determining the proper interest rate to apply to a secured creditor's 910-vehicle claim in a debtor's chapter 13 plan. Recognizing that the hanging paragraph prevents bifurcation of a secured 910-vehicle

---

[3]     Courts in other jurisdictions have approved risk adjustment rates within the 1% to 3% range on claims secured by a debtor's car. *See In re Grunau,* 355 B.R. 334, 337 (M.D. Fla. 2006) (ordering debtors to modify chapter 13 plan to include risk adjustment rate of 2% on claim secured by debtor's car); *In re Pokrzywinski,* 311 B.R. 846, 850-51 (Bankr. E.D. Wis. 2004) (ordering debtor to pay risk adjustment rate of 1.5% on claim secured by debtor's car); *In re Harken,* No. 04-02914, 2004 WL 3019467, at *1, 2 (Bankr. N.D. Iowa Nov. 29, 2004) (accepting debtor's proposed risk adjustment rate of 3% on claim secured by debtor's car); *In re Collins,* 167 B.R. 842 (Bankr. E.D. Tex. 1994) (overruling creditor's objection to risk adjustment rate of 2.3% on claim secured by debtor's car).

7

claim, the court rejected the creditor's effort to distinguish *Till* on that basis, finding the argument "unpersuasive because *Till* did not rely upon the fact that the creditor's claim had been bifurcated using section 506. The purpose of bifurcation is to determine how much of a creditor's claim is secured; then section 1325(a)(5)(B) determines what interest rate should be applied to that secured claim." *Id.* at 347. Additionally, the court stated that "BAPCPA did not amend the definition of value under section 1325(a)(5)(B), nor did it prohibit bankruptcy courts from altering contractual terms for secured claims." *Id.* at 347. And, the court noted, "[i]f Congress had intended to exclude the secured claims covered by the hanging paragraph from being modified in bankruptcy it could have done so explicitly as it has done with home mortgages," citing to section 1322(b)(2) which permits a chapter 13 plan to modify rights of a secured creditor, "*except* for a claim secured by a debtor's principal residence". *Id.* at 347 n.12 (emphasis in original).

Other courts agree that the hanging paragraph prevents bifurcation of claims, but does not prevent modification of the repayment terms. *See In re Estrada*, 387 B.R. 875, 879 (Bankr. M.D. Fla. 2008) ("Pre-BAPCPA, a debtor in chapter 13 could receive both the 'cram down' and 'strip down' benefits. By enacting the Hanging Paragraph, Congress limited the debtor's ability to 'strip down' certain secured claims under section 506, but not its ability to 'cram down' the secured claims under section 1325(a)(5)(B). The Hanging Paragraph removed this double benefit for 910-vehicle debts, eliminating the section 506 'strip down.' However, even without utilizing the strip down available under section 506, a debtor may still cram down new repayment terms as to duration and interest rate under section 1325(a)(5)(B). It is only the strip down under section 506 that

8

is now unavailable for 910 vehicles.") (internal citations omitted).[4] The hanging paragraph makes no mention of modifying repayment terms and, accordingly, places no restrictions on it. *In re Trejos*, 352 B.R. 249, 266 (Bankr. D. Nev. 2006); *In re Johnson*, 337 B.R. 269, 271 (Bankr. M.D.N.C. 2006) (holding that "a plan may still modify the term of the loan and interest rate, even if bifurcation is not allowed").

Here, the Debtor proposes to modify the interest rate from the 24.99% contract rate to 5.25%, applied to the principal balance of Santander's secured claim, and to pay the claim through the Debtor's chapter 13 plan. The Debtor's motion proposes to pay interest at the rate of prime plus 2%, the mid-point of the 1% - 3% range approved by bankruptcy courts, including this Court. Discussing the selection of the proper interest rate in *Martinez*, this Court stated as follows:

> When a creditor objects to the risk adjustment rate proposed by the debtor, courts have found that the creditor bears the evidentiary burden to establish the need for a higher rate. The creditor must meet its burden at an evidentiary hearing where the debtor and any creditor may present evidence about the appropriate risk adjustment.
>
> This burden falls on the creditors because the creditors may have access to information that is absent from the debtor's filing. Creditors tend to have more experience and knowledge of the lending markets since it is necessary to gather information about their lending markets to remain competitive. Any relevant information a debtor has access to is likely already included in the debtor's bankruptcy filings.

409 B.R. at 41 (internal citations omitted).

In this case, Santander did not file any response to the Debtor's motion to modify

---

[4] Both *Drive Fin. Servs.*, 521 F.3d at 346–47, and *Estrada*, 387 B.R. at 879–80, discuss the distinction between "cram down" and "strip down," the former referring to modifying repayment terms other than the amount of an allowed secured claim, and the latter referring to bifurcation of an undersecured claim into its secured and unsecured portions. Both cases recognize that the hanging paragraph prevents "strip down" but not "cram down" of claims that are subject to the hanging paragraph. Both cases recognize that courts sometimes confuse and misapply the two concepts. Other than quoting from cases discussing cram down and strip down, the Court has avoided using either term.

9

the interest rate and did not file an objection to confirmation or to the proposed modified interest rate. The Debtor's Amended Plan and schedules reflect no prepetition arrears on the Santander Loan. The Debtor is currently employed as a nurse, and the Debtor's schedules reflect sufficient income to maintain plan payments if the Amended Plan is confirmed. Therefore, it appears that the 5.25% proposed interest rate is high enough to properly compensate Santander for its risk.

## CONCLUSION

The Debtor's motion to modify the interest rate payable on Santander's secured 910-vehicle claim was unopposed. Nor did Santander file any objection to confirmation. Claim # 1 nevertheless states "no cramdown per statute." As explained above, while a debtor's chapter 13 plan may not bifurcate a 910-vehicle claim, it may modify the payment terms, including the interest rate. The Debtor's proposed 5.25% interest rate, set at prime rate plus 2%, properly applies the *Till* formula approach and sets the interest rate, based on the facts and circumstances of this case, at a rate that adequately compensates Santander for its risk. Therefore, the Debtor's motion to modify the interest rate payable to Santander as part of a confirmed chapter 13 plan is **GRANTED.** Any other issue for confirmation shall be taken up at the adjourned confirmation hearing.

**IT IS SO ORDERED.**

DATED:    July 7, 2010
          New York, New York

                                            /s/Martin Glenn
                                          MARTIN GLENN
                                    United States Bankruptcy Judge